UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DOUGLAS DOMINO, SR.**                                                      **CIVIL ACTION**

**VERSUS**                                                                            **NO. 22-1760**

**GUARDIAN LIFE INSURANCE**                                        **SECTION "B"(4)**
**COMPANY OF AMERICA, ET AL.**

ORDER AND REASONS

Before the Court are parties' competing motions for summary judgment including defendant Guardian Life Insurance Company of America's motion for summary judgment (Rec. Doc. 28), plaintiff Douglas Domino, Sr.'s opposition (Rec. Doc. 33), and defendant's reply (Rec. Doc. 42); also plaintiff's motion for summary judgment (Rec. Doc. 30), defendant's opposition (Rec. Doc. 31), and plaintiff's reply (Rec. Doc. 44). For the following reasons,

**IT IS HEREBY ORDERED** that defendant Guardian Life Insurance Company of America's motion for summary judgment (Rec. Doc. 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff Douglas Domino, Sr.'s motion for summary judgment (Rec. Doc. 30) is **DENIED**.

I.   **FACTS AND PROCEDURAL HISTORY**

Douglas Domino, Sr. ("plaintiff") began his employment at Gulf Coast Express Carriers, Corp. ("Gulf Coast")[1] as a commercial truck driver on February 20, 2020. *See* Rec. Doc. 28-1 at 1; Rec. Doc. 30-1 at 1. This required "hauling loads, operating heavy machinery, balancing, exposure to changes in temperature and humidity, and adhering to precise levels of performance . . . ." Rec. Doc. 30-1 at 3. Gulf Coast maintains that plaintiff worked five days a week for twelve hours per day, at a total of sixty hours per week. *Id.*

---

[1] Gulf Coast was dismissed with prejudice upon the motion of plaintiff. *See* Rec. Docs. 45; 46.

1

In March 2021 plaintiff filed a claim for short-term disability benefits under Gulf Coast's employee welfare benefits plan, alleging that the last day he worked was February 13, 2021. Rec. Doc. 28-1 at 1–2. On March 8, 2021, plaintiff saw his primary care physician, Dr. Sunil Bharwani, complaining of feeling dizzy and lightheaded, making him unable to drive. Rec. Doc. 28-4 at 869. Dr. Bharwani made an assessment and determined these symptoms were due to hypertension and recommended that plaintiff not drive if he was having symptoms such as dizziness. *Id.* Then on March 31, 2021, plaintiff was admitted to the emergency room where his primary impression was diabetic ketoacidosis, and secondary impressions were hyperglycemia and new onset type 2 diabetes mellitus. Rec. Doc. 28-4 at 522–30. Plaintiff was discharged from the hospital on April 4, 2021. *See id.* at 531. Guardian acknowledges that this diagnosis of insulin-dependent diabetes mellitus would prevent plaintiff from driving a CDL truck per Department of Transportation guidelines. Rec. Doc. 28-1 at 7; Rec. Doc. 33 at 8.

Gulf Coast's short-term disability ("STD") and long-term disability ("LTD") components of its employee welfare benefits plan are administered through Guardian Life Insurance Company of America, specifically Guardian's Group Policy No. G-00450794-EC issued to Gulf Coast. Rec. Doc. 28-1 at 1–2. Plaintiff's coverage under this plan began on May 1, 2020, not long after joining Gulf Coast. *See id.* at 2.

To qualify under the policy an employee "must be an active full-time employee," which requires the employee:

> (a) be legally working in the United States.
> (b) be regularly working at least the number of hours in the normal work week set by [the] employee (but not less than 30 hours per week), at:
>     (i) [the] employer's place of business;
>     (ii) some place where [the] employer's business requires [them] to travel; or
>     (iii) any other place [they] and [their] employer have agreed upon for performance of occupational duties.

2

Rec. Doc. 28-4 at 55. Also, according to the policy "long term disability coverage ends on the date [an employee's] active full-time service ends for any reason." *Id.* at 57. The policy further states that "[i]t also ends on the date [an employee] stop[s] being a member of a class of employees eligible for insurance under this plan, or when this plan ends for all employees . . . ." *Id.* The policy goes on to state:

> However, if [the employee is] disabled, as defined by this plan when [their] active full-time service ends, coverage remains in force during: (a) the elimination period, subject to premium payment, if (i) the disability is not excluded under the plan; and (ii) benefits are not excluded due to application of this plan's pre-existing condition provision; and (b) the period for which benefits are payable under this plan.

*Id.* The policy defines disability or disabled as:

> [P]hysical, mental or emotional limits caused by a current sickness or injury. And, due to these limits, [the employee is] not able to perform the major duties of [their] own occupation or any gainful work as
> shown below:
>
> > (1) During the elimination period and the own occupation period, [they] are not able to perform, on a full-time basis, the major duties of [their] own occupation.
> > (2) After the end of the own occupation period, [they] are not able to perform, on a full-time basis, the major duties of any gainful work.
>
> [They] are not disabled if [they] earn, or are able to earn, more than this plan's maximum allowed income earned during disability.
>
> [They] may be required, on average, to work more than 40 hours per week. In this case, [they] are not disabled if [they] are able to work for 40 hours per week.
>
> Loss of a professional or occupational license will not, in itself, constitute disability. But, if [they] are a health care practitioner, [their] state licensing board may restrict your ability to perform your occupation due to testing positive.

*Id.* at 92. The policy defines a pre-existing condition as "a sickness or injury, including all related conditions and complications, for which, in the look back period, you: (a) receive advice or treatment from a doctor; (b) take prescribed drugs; or (c) receive other medical care or treatment,

3

including consultation with a doctor." *Id.* at 89. Accordingly:

> The "look back period" is the three months before the latest of: (a) the effective date of your insurance under this plan; (b) the effective date of a change that increases the benefits payable by this plan; and (c) the effective date of a change in your benefit election that increases the benefit payable by this plan.

*Id.* at 90.

During the look back period plaintiff was taking medication for his hypertension, and plaintiff concedes this was an excluded pre-existing condition. *See id.* at 349, 543; Rec. Doc. 30-1 at 3. "Guardian approved Plaintiff's STD claim and paid benefits through the maximum duration of the 13-week STD benefit period;" however Guardian subsequently denied plaintiff's claim for LTD benefits citing plaintiff's pre-existing hypertension. *See* Rec. Doc. 28-1 at 2–3. Plaintiff appealed Guardian's decision, but Guardian upheld the denial on appeal. *Id.* at 3.

Following Guardian's denial of plaintiff's claim for LTD benefits, plaintiff filed suit in this Court on June 14, 2022. *See* Rec. Doc. 1. Plaintiff seeks enforcement of terms of plan and action for unpaid benefits under 29 U.S.C. § 1132(a)(1)(B), and further alleges breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), and seeks penalties pursuant to Employee Retirement Income Security Act ("ERISA") as well as attorney fees and costs. *See* Rec. Doc. 1 at 3–5. Defendant Guardian moved to dismiss plaintiff's claim under 29 U.S.C. § 1132(a)(3) (Rec. Doc. 8), which was unopposed by plaintiff (Rec. Doc. 15), and ultimately the motion was granted by this Court (Rec. Doc. 20). Defendant filed its motion for summary judgment on April 10, 2023, and plaintiff filed his competing motion for summary judgment on April 11, 2023. *See* Rec. Doc. 28; Rec. Doc. 30. Both parties filed oppositions and replies.

## II. LAW AND ANALYSIS

### A. Motion for Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). As such, the court should view all facts and evidence in the light most favorable to the non-moving party, without "making credibility determinations or weighing the evidence." *United Fire & Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283, 285 (5th Cir. 2006); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

When the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *See Sec. & Exch. Comm'n v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (citation and internal quotation omitted). On competing motions for summary judgment the Court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Deanda v.*

5

*Becerra*, No. 2:20-92, 2022 WL 17572093, at *2 (N.D. Tex. Dec. 8, 2022) (quoting *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021)).

### B.  ERISA Claims

The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), was enacted in part "to protect . . . the interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies . . . and ready access to the Federal courts." *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 969 (5th Cir. 1981) (quoting 29 U.S.C. § 1001(b) (1976)). "In ERISA actions, '[s]tandard summary judgment rules control.'" *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (citation omitted)).

Whereas suits brought under Section 1132(a)(1)(B) generally review the denial of a claim for long-term disability benefits de novo, "if the benefits plan the suit is brought under 'gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' the denial of benefits is reviewed for an abuse of discretion." *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 137 (5th Cir. 2016) (citations omitted). "An ERISA claimant bears the burden to show that the administrator abused its discretion." *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir. 2019) (internal quotations omitted) (quoting *George v. Reliance Stand. Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015)).

Here, defendant contends, and plaintiff concedes, that the administrator was vested with discretion to construe the plan's terms and make eligibility determinations, and therefore the Court reviews Guardian's denial of plaintiff's long-term disability benefits for an abuse of discretion. *See* Rec. Doc. 28-1 at 3; Rec. Doc. 33 at 2.

The Court "may apply a two-step analysis to determine whether the administrator . . . abused its discretion, first determining whether the administrator's decision was legally sound and, if it is not, determining whether the decision was an abuse of discretion in any event." *High v. E-Sys. Inc.*, 459 F.3d 573, 577 (5th Cir. 2006) (citation omitted). "In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999) (internal quotations and citation omitted). "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009). Additionally, the Court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 247 (quoting *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)). However, "[i]f the administrator has a conflict of interest, 'we weigh the conflict of interest as a factor in determining whether there is an abuse of discretion in the benefits denial . . . .'" *Id.*

**A. Defendant's Motion for Summary Judgment**

Defendant Guardian Life Insurance Company of America ("Guardian") filed its motion for summary judgment on April 10, 2023. *See* Rec. Doc. 28. As plaintiff, the non-movant, bears the burden of proof at trial, defendant can point to an absence of evidence, and once established, plaintiff must point to genuine issue of material fact. *Lindsey*, 16 F.3d at 618. As the non-movant, we will view all facts and evidence in the light most favorable to plaintiff. *See United Fire & Cas. Co.*, 453 F.3d at 285.

The issue presented is whether plaintiff was covered under defendant's policy when he was

diagnosed with insulin-dependent diabetes mellitus. This issue turns on whether he was considered to be in "active full-time service" within the meaning of the policy while on sick leave after exhausting his paid time off ("PTO").

The first step is to analyze whether defendant's decision to deny benefits was legally correct. *See High*, 459 F.3d at 577; *Porter v. Lowes Cos., Inc.'s Bus. Travel Acc. Ins. Plan*, 731 F.3d 360, 364 (5th Cir. 2013). To determine this, the Court considers "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan." *Porter*, 731 F.3d at 364 n.8 (internal quotations omitted) (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2007)). However, the second factor is the most important of the three. *See Crowell*, 541 F.3d at 313.

After reviewing the administrative record, and the parties' pleadings, and weighing all the evidence, the Court finds that Guardian's decision was legally sound. Parties do not explicitly brief the first factor of whether the administrator has given the plan a uniform constriction, so we turn to the second factor, which notably is the most important to the analysis.

Guardian's interpretation is consistent with a fair reading of the plan. According to the policy, to maintain coverage, an employee "must be an active full-time employee," and must "be regularly working at least the number of hours in the normal work week set by [the] employer (but not less than 30 hours per week)." Rec. Doc. 28-4 at 55. The policy specifically states that "long term disability coverage ends on the date [the employee's] active full-time service ends for any reason," but the policy fails to define "active full-time service." *Id.* at 57. The policy does define "Active Work, Actively-At-Work Or Actively Working" as:

> You are able to perform and are performing all of the regular duties of your work for your employer, on a full-time basis at: (a) one of your employer's usual places

8

>   of business; (b) some place where your employer's business requires you to travel; or (c) any other place you and your employer have agreed on for your work.

*Id.* at 70. However, this definition fails to mention "active full-time service."

>   In upholding Mr. Domino's claim denial on appeal, Guardian stated:
>
>   Plan 450794 also states that an employee's LTD coverage under the plan will end on the date his active full time service ends for any reason. Active Work means an employee is able to perform and is performing all of the regular duties of his work on a full-time basis.
>   Mr. Domino's last day of Active Work was February 13, 2021. Mr. Domino used his PTO and was paid through March 13, 2021. Guardian administratively considers payment for earned PTO as Active Work, therefore, in this case, Mr. Domino's last day of Active Work was March 13, 2021. Because Mr. Domino ceased Active Work due to a disability excluded from payment due to the plan's pre-existing condition provision, he was no longer covered under the LTD plan effective March 14, 2021 when his Active Service ended.
>   The medical evidence documents that Mr. Domino was diagnosed with new onset type 2 diabetes mellitus on March 31, 2021 and prescribed insulin. Because he is taking insulin, he is unable to drive a CDL truck. Unfortunately, Mr. Domino's LTD coverage was no longer in force on March 31, 2021 because he was no longer actively working. Therefore, we are unable to consider payment of benefits for a period of disability commencing on March 31, 2021 due to insulin dependent diabetes mellitus.

Rec. Doc. 28-4 at 352–53. Plaintiff argues that defendant conflates the terms "active full-time service" and "Active Work" resulting in an unfair reading of the plan. *See* Rec. Doc. 33 at 5. To determine the meaning of active full-time service, the Court considers the provisions of the plan as a whole, not in isolation. *See Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 251 (5th Cir. 2019) (citation omitted). Further, "[t]he provisions are to be read according to their plain meaning and as they are likely to be 'understood by the average plan participant.'" *Id.* (quoting *Walker v. Wal-Mart Stores, Inc.*, 159 F.3d 938, 940 (5th Cir. 1998)).

It is undisputed that plaintiff's last day of work was February 13, 2021, and that he exhausted his PTO on March 13, 2021. *See* Rec. Doc. 33-1 at 7; Rec. Doc. 28-1 at 8. Plaintiff was then placed on medical leave starting on March 14, 2021. *See* Rec. Doc. 28-4 at 371. While on

9

medical leave plaintiff was diagnosed with insulin-dependent diabetes mellitus on March 31, 2021. *See* Rec. Doc. 33-1 at 7. To the extent that plaintiff argues that he was in active full-time service while on medical leave, that argument is rejected.

Plaintiff argues that active full-time service "encompasses employees who are still considered an employee and have not retired, even if out on extended sick leave, and whose job description requires thirty hours of work per week;" however when reading this policy as a whole, the Court cannot give the term active full-time service such a meaning. *See* Rec. Doc. 33 at 3. Plaintiff relies heavily on *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 285 (5th Cir. 2021) and states that the *Miller* court interpreted the same language ("active full-time service"); however this is a misrepresentation of the case. *See* Rec. Doc. 33 at 2–3. In *Miller* the court analyzed different policy language which included the term "active, Full-time Employee," whereas here the language is "active full-time service." *See Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 284 (5th Cir. 2021); Rec. Doc. 28-4 at 57. Whereas the Fifth Circuit in *Miller*, while citing to a Sixth Circuit opinion, held the ambiguous term "'Active' could mean that a party is able and available to work, but not present on that day . . . . 'Active' could also mean non-retired." *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 285 (5th Cir. 2021). However, the same result is not warranted here based on the different Guardian's policy language at issue. The *Miller* court also held that "[w]hen construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists," and that the court should "apply the rule of *contra proferentem* to ambiguous terms—construing them strictly in favor of the insured—but only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation." *Miller*, 999 F.3d at 283 (cleaned up). Therefore, we consider the ordinary accepted meaning of the terms along with the ordinary principles of contracts

10

before turning to the doctrine of *contra proferentem*.

While plaintiff claims that "[t]he courts that have reviewed this language have found that 'active full-time service' encompasses employees who are still considered an employee and have not retired, even if out on extended sick leave, and whose job description requires thirty hours of work per week," plaintiff's statement is merely conclusory as he provides no such case example. *See* Rec. Doc. 33 at 3. However, the United States District Court for the District of Minnesota considered a policy similar to the one at issue, but cautioned that "[t]he policy states that coverage ends on the date 'an employee's active full-time service ends for any reason . . . . This language is facially absolute, but it is difficult to believe that coverage under the Guardian policy ends anytime an employee fails to work 32 hours in one week. Otherwise, an employee who goes on vacation or takes a couple of sick days would lose coverage . . . ." *See Granite v. Guardian Life Ins. Co. of Am.*, 544 F. Supp. 2d 833, 848 (D. Minn. 2008).

This Court agrees that the provision at issue, "[y]our long term disability coverage ends on the date your active *full-time* service ends for any reason," is facially absolute. However, when considering the policy as a whole and looking to similar provisions, it becomes clear that this phrase has its limitations. Under the section for eligibility for life and dismemberment coverages, the policy states "[y]our coverage ends on the date your active *full-time* service ends for any reasons. *Such reasons include disability, death, retirement, layoff, leave of absence and the end of employment*." Rec. Doc. 28-4 at 19 (emphasis added); *see also* Rec. Doc. 28-4 at 157 (active service may end "because he is disabled," or "because he goes on a leave of absence or is laid off"). Applying the doctrines of *expressio unis est exlusio alterius* or *ejustem generis* the result is the same: *short temporary* absences would not result in an employee falling out of active full-time service, and employees would still be entitled to take sick days, vacations, and holidays without

11

losing their status of being in active full-time service.

Further, this Court considers the policy's definition of "full-time" which "means the employee *regularly* works at least the number of hours in the normal work week set by the employer (but not less than 30 hours per week), at his employer's place of business." Rec. Doc. 28-4 at 96 (emphasis added). Temporary absences would not disturb regular employment; whereas long term or extended absences such as the examples provided in the section for eligibility for life and dismemberment coverages would contradict regular work and full-time status.

It is undisputed that plaintiff was considered to still be in active full-time service while on PTO, and the issue involves plaintiff's medical leave that followed the PTO. This was an unpaid indeterminate leave of absence due to uncontrolled hypertension. *See id.* at 349–51; Rec. Doc. 25-11 at 1; Rec. Doc. 25-12 at 2. While over two weeks elapsed from plaintiff's last day of PTO, over six weeks elapsed from his last day worked and the date he was diagnosed with insulin-dependent diabetes mellitus. In fact, this unpaid medical leave lasted until October 6, 2021, when his employment was terminated. *See* Rec. Doc. 25-11 at 1. Plaintiff's unpaid medical leave following his PTO cannot be said to be temporary or otherwise align with term active full-time service based on the applicable jurisprudence or under the ordinary principles of contract interpretation. Therefore, the Court finds it is not warranted to apply the doctrine of *contra proferentem* or decide its applicability here.

Plaintiff further argues that his coverage under the policy should have continued under the section concerning "An Employee's Right To Continue Group Short Term And Long Term Disability During A Family Leave of Absence[.]" *See* Rec. Doc. 33 at 4 (citing Rec. Doc. 28-4 at 187). Plaintiff contends that defendant ignored this section and "arbitrarily added an 'unwritten' rule that requires a leave of absence under this provision to be pursuant to the Family and Medical

Leave Act." *Id.* However, in coming to this conclusion, plaintiff ignores both the title of this section and the "Important Notice". The title explicitly states, "Family Leave of Absence," and the Important Notice states that "[t]his section may not apply to your plan. The employee must contact [the employer] to find out if [the employer] must allow for a leave of absence *under federal law. In that case the section applies*." *See* Rec. Doc. 28-4 at 187 (emphasis added). The section goes on to state: "Long Term Disability coverage may normally end for an employee because he or she ceases work due to an approved leave of absence. But the *employee* may continue his or her group coverage if the leave of absence has been granted . . . (c) due to the employee's own serious health condition . . . ." *Id.* Plaintiff argues that he clearly intended for coverage to continue as he paid premiums until June 20, 2021, and that defendant added an unwritten rule that leave must be pursuant to the Family and Medical Leave Act ("FMLA"). *See* Rec. Doc. 33 at 4. However, in making this argument plaintiff seemingly ignores the clear language of the section. As previously mentioned, the section heading states this is for Family Leave of Absence, and the section then cautions that this may not apply. In order for it to apply, an employer must be required to allow for a leave of absence under federal law, yet plaintiff makes no such allegation that any federal law requires his employer to allow for a leave of absence. Conclusory statements are not enough to carry plaintiff's burden of proof; therefore he has not shown that this section would apply. Defendant's interpretation of the term active full-time service and provision regarding continuation of coverage is consistent with a fair reading of the policy as a whole, and plaintiff has not carried his burden to demonstrate otherwise.

Addressing the next prong, whether there are "any unanticipated costs resulting from different interpretations of the plan," plaintiff argues that "giving 'active full-time service' different meanings in the context of *de novo* review versus arbitrary and capricious review would

13

create significant uncertainty for ERISA administrators and beneficiaries going forward." *See* Rec. Doc. 33 at 5. However, as defendant points out this is a misinterpretation of the law, as "'unanticipated costs' are those caused by the use of the plaintiff's interpretation instead of the administrator's" on the plan. *See* Rec. Doc. 42 at 5 n.1; *see also Batchelor v. Int'l Bd. of Elec. Workers Loc. 861 Pension & Ret. Fund*, 877 F.2d 441, 445 (5th Cir. 1989). Plaintiff makes no allegations regarding the unanticipated costs to the plan under his interpretation. Likewise, whereas defendant correctly states the law, defendant offers the court a conclusory statement that "[plaintiff's] interpretation would only serve to create unanticipated costs on the plan and, by extension, the other participants," without providing the Court with any evidence of unanticipated costs. *See* Rec. Doc. 42 at 5. Considering the administrative record, the pleadings, and the aforementioned factors this Court finds that defendant's interpretation of the policy is legally correct.

However, even if defendant's interpretation was not legally correct, defendant did not abuse its discretion in denying plaintiff's long-term disability benefits. When analyzing whether defendant abused its discretion, the Court considers "whether the plan administrator acted arbitrarily or capriciously." *See Meditrust Fin. Servs. Corp.*, 168 F.3d at 214 (internal quotations and citation omitted). If the administrator's decision is reasonable considering the known facts, even if on the low-end, the decision is not arbitrary. *See Holland*, 576 F.3d at 246–47. Here, defendant's interpretation that active full-time service did not include an employee who had not worked for several weeks, who had exhausted his PTO and was on medical leave without a set end date is reasonable considering the policy language and known facts. Plaintiff's statement that "this [interpretation] goes beyond a questionable but defensible interpretation of plan terms and is indeed an arbitrary and capricious abuse of discretion," is conclusory and not supported by the

facts or jurisprudence. *See* Rec. Doc. 33 at 6. Further, while the Court recognizes and the defendant concedes that Guardian has a conflict of interest due to its dual role, the Court does not find that this conflict changes the Court's analysis or conclusion. *See* Rec. Doc. 28-1 at 4. Defendant's interpretation that the section regarding family leave of absence did not apply to defendant as he did not apply for leave under the FMLA, was also reasonable, as the section only applied where the employer must allow for leave under federal law. Additionally, plaintiff cited no federal law that would require defendant to allow leave of absence. Finding that defendant's interpretations of the policy were reasonable, the Court holds that defendant did not act arbitrarily or capriciously as to abuse its discretion. Therefore, defendant is entitled to summary judgment as a matter of law.

### B. Plaintiff's Motion for Summary Judgment

Having found that defendant is entitled to summary judgment as a matter of law, plaintiff's motion for summary judgment is **DENIED** for the reasons stated above. To the extent that plaintiff's motion for summary judgment (Rec. Doc. 30) and his reply memorandum to defendant's opposition (Rec. Doc. 30) raise additional arguments other than those raised in plaintiff's opposition to defendant's motion for summary judgment (Rec. Doc. 33), the Court rejects these arguments as plaintiff provides no additional evidence that the Court has not already taken into consideration in ruling on defendant's motion for summary judgment. Whereas plaintiff does provide a lengthier analysis of the test for determining whether defendant abused its discretion, plaintiff's argument consists largely of conclusory statements that cannot be the basis for finding defendant abused its discretion.

New Orleans, Louisiana this 25th day of January, 2024

SENIOR UNITED STATES DISTRICT JUDGE